**NOT FOR PUBLICATION**

# FILED

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT



| | |
|---|---|
| NATIVE ECOSYSTEMS COUNCIL and ALLIANCE FOR THE WILD ROCKIES, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> LEANNE MARTEN, Regional Forester of Region One of the U.S. Forest Service; et al., <br><br> Defendants-Appellees. | No.    16-35577 <br><br> D.C. No. 9:15-cv-00098-DLC <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, Chief Judge, Presiding

Argued and Submitted March 5, 2018
Seattle, Washington

Before:  RAWLINSON, CLIFTON, and CHRISTEN, Circuit Judges.

Plaintiffs appeal the district court's order granting summary judgment to

Defendants.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

**1.** Defendants' decision to average snag density over the Project area as a whole was not arbitrary and capricious. In developing the Beaverhead-Deerlodge National Forest Plan's snag standard, Defendants relied on a study that "provide[d] the most current snag data available" on eastside Montana forests. Plaintiffs argue the snag standard was inconsistent with the recommendations in another study, but Plaintiffs' preferred study was older than the study on which Defendants relied, focused on westside rather than eastside Montana forests, and did not purport to require Defendants to pursue a particular approach. Defendants relied on accepted science in determining how to calculate snag density, and this court is "at its most deferential when reviewing scientific judgments and technical analyses within the agency's expertise." *Native Ecosystems Council v. Weldon*, 697 F.3d 1043, 1051 (9th Cir. 2012) (internal quotation marks omitted).

The case on which Plaintiffs rely, *Oregon Natural Resources Council Fund v. Brong*, 492 F.3d 1120 (9th Cir. 2007), does not counsel otherwise. Plaintiffs here do not allege the East Deerlodge Project is inconsistent with the goals of the Forest Plan, as did the plaintiffs in *Brong*, *see id.* at 1124; instead, they allege the Forest Plan is inconsistent with the National Forest Management Act (NFMA). But NFMA does not require a particular manner of calculating snag retention. And unlike in *Brong*, here there is no evidence Defendants were "attempt[ing] to dilute

2

the effects of its proposed activities by averaging the snag retention over such a wide area" in order to sidestep environmental review. *Id.* at 1130.

Plaintiffs also did not show that the snag standard arbitrarily and capriciously failed to ensure the viability of cavity-nesting species. Again, Defendants modeled the snag standard on a scientific study, including its prediction that "due to the ongoing and future predicted bark beetle epidemics and fire many more snags will be available in the 10"+ DBH." Defendants sought to effectuate the long-term goal of ensuring snag availability by retaining live trees in the same size class in which snags were currently unavailable, and Plaintiffs have not shown that snag-dependent species would not nest in snags of larger size expressly preserved by the Forest Plan, nor that the viability of these species would be threatened if snags between 10" and 15" dbh were unavailable.

**2.** Plaintiffs failed to exhaust their concerns about disclosure of Riparian Management Objectives (RMOs) for Riparian Conservation Areas (RCAs) by not providing the agency with notice of their specific objections. It is undisputed that Plaintiffs filed comments to the Project Draft Environmental Impact Statement (EIS), and to the Revised Draft EIS. Plaintiffs also timely objected to the Project Record of Decision. But neither Plaintiffs' comments nor their objections asked Defendants to disclose the quantitative RMOs nor to discuss whether Project

3

activities in RCAs were meeting, exceeding, or failing to meet RMOs. Plaintiffs'

requests were far more general: to "disclose the results of up-to-date monitoring of

fish habitat and watershed conditions, as required by the Forest Plan," and to

"evaluate watersheds in the project area for effect on water quality." These

statements did not put the agency on notice as to Plaintiffs' specific concerns such

that the agency would know to offer the detailed answers Plaintiffs now seek. *See*

*Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 965 (9th Cir. 2002)

(observing that while plaintiffs may alert decision makers to a problem using

general terms rather than "precise legal formulations," claims must "be raised with

sufficient clarity to allow the decision maker to understand and rule on the issue

raised"). Because Plaintiffs failed to exhaust administrative procedures before

bringing this action, *see* 7 U.S.C. § 6912(e), we do not address the merits of

Plaintiffs' NFMA or National Environmental Policy Act claims.

**AFFIRMED.**